United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 18, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 20-34222 |
| **IRONSIDE, LLC,** § | |
| Debtors. § | Jointly Administered |
| § | CHAPTER 11 |

## MEMORANDUM OPINION AND ORDER
## FOR APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER

Pending before the Court is a single matter self-styled as "Motion for Status Conference Regarding Unauthorized Sale of Property" ("*Motion*")[1] filed by First Financial Bank, N.A. on February 3, 2022. After considering the pleadings on file, arguments of counsel, evidence in the record, and applicable law, the Court finds that a Chief Restructuring Officer should be appointed.

### I. BACKGROUND

On August 20, 2020, Ironside, LLC and Ironside Lubricants, LLC ("*Debtors*") filed their separate petitions under chapter 11 of the United States Bankruptcy Code.[2] On September 3, 2020, the two cases were jointly administered.[3] On February 3, 2022, First Financial Bank, N.A. filed the instant Motion. On February 8, 2022, the Court held a hearing on the Motion, issued an order for show cause ("*Order For Show Cause*"),[4] and continued the matter to a final hearing on February 18, 2022.

### II. JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[5] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), the instant matter is core because the Order For Show Cause seeks relief under the United States Bankruptcy Code. Furthermore, this Court may only hear a case in which venue is proper.[6] Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtors' principal place of business is Conroe, Texas. Therefore, venue is proper.

---

[1] ECF No. 137.
[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C. ECF No. 1.
[3] ECF No. 6.
[4] ECF No. 155.
[5] 28 U.S.C. § 157(a). *See also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[6] 28 U.S.C. § 1408.

### III. Constitutional Authority to Enter Orders

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.[7] In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[8] As indicated above, the pending dispute before this Court is a core proceeding. The ruling in *Stern* was limited to the one specific type of core proceeding involved in that dispute, which is not implicated here. Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[9] Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2),[10] this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern,* the debtor filed a counterclaim based *solely* on state law; whereas, here, the Order For Show Cause is based on express provisions of the Bankruptcy Code—11 U.S.C. §§ 1104 and 1107—and judicially-created bankruptcy law interpreting those provisions. This Court is therefore constitutionally authorized to enter a final order. Additionally, this Court has constitutional authority to enter a final order because neither party has objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### IV. Analysis

The Bankruptcy Code generally permits chapter 11 debtors to remain in control of their assets and business operations.[11] Termed debtor-in-possession, it owes fiduciary duties to the bankruptcy estate.[12] Such fiduciary duties include a duty of care to protect the assets, a duty of loyalty, and a duty of impartiality.[13] To fulfill its duties, a debtor-in-possession must avoid self-dealing, conflicts of interest, and the appearance of impropriety.[14] When a debtor-in-possession is incapable of performing its statutory duties, a chapter 11 trustee may be appointed.[15] However,

---

[7] *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters).

[8] 564 U.S. at 503.

[9] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . . We decline to extend *Stern*'s limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).

[10] *See First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.),* 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . .").

[11] *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 655 (Bankr. S.D.N.Y. 2006).

[12] *In re Eurospark Industries, Inc.*, 424 B.R. 621, 627 (Bankr. E.D.N.Y. 2010).

[13] *In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995).

[14] *Id.*

[15] *See* 11 U.S.C. § 1104(a).

the appointment of a trustee is the exception, rather than the rule, and is an extraordinary remedy.[16] Although the Code contains no particular standard of proof, the majority view is that the party moving for appointment of a trustee must prove the need for a trustee by clear and convincing evidence.[17]

It is not necessary to find fault on the part of the debtor-in-possession before appointing a chapter 11 trustee in "the interests of creditors, any equity security holders, and other interests of the estate" pursuant to § 1104(a)(2).[18] When deciding whether relief under § 1104(a)(2) is warranted, a court will consider: (i) the trustworthiness of the debtor; (ii) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of creditors in present management; and; (iv) the benefits derived by the appointment of a trustee; balanced against the cost of the appointment.[19] Notwithstanding the articulation of these factors, the § 1104(a)(2) standard is flexible.[20] Ultimately, the court should consider the practical realities, necessities of the case, and the totality of the circumstances in determining whether to appoint a trustee.[21]

Ironside LLC's December 2020 Monthly Operating Report reflects sale of a Stratasys 900MC 3D printer for $165,000.[22] On July 1, 2021, Ironside LLC wired $165,000 from its DIP account to First Financial Bank, N.A.[23] Ironside LLC's January 2021 MOR reflects the sale of mini mill for $12,000.[24] Exhibit C of the MOR discloses a deposit of $12,000 into Debtors' DIP account on January 22, 2021 labeled "proceeds from sale of mini mill."[25] Ironside LLC admits that neither the sale of the printer nor the sale of the mini mill was in the ordinary course of business. Thus, Ironside LLC was required to adhere to § 363(b)(1) and Federal Rule of Bankruptcy Procedure 6004(a); Ironside LLC failed to do so. The sale of the printer was not brought to this Court's attention until February 3, 2022 by First Financial Bank, N.A.'s Motion and the sale of the mini mill was not brought to the Court's attention until the February 8, 2022 hearing by Lubchem, Inc.

Upon considering the pleadings on file, evidence in the record, arguments of counsel, and applicable law, the Court finds it in the best interest of Debtors' bankruptcy estates to appoint a chief restructuring officer. Accordingly, it is therefore:

**ORDERED** that:

1. Pending further order of this Court, Deirdre Carey Brown is hereby appointed as the Chief Restructuring Officer ("*CRO*") for Debtors and shall be vested with the powers to

---

[16] *In re Adelphia Commc'ns Corp.*, 336 B.R. at 655.
[17] *See In re G-I Holdings, Inc.*, 385 F.3d. 313, 315 (3d Cir. 2004); *see also Matter of Cajun Elec. Power Co-Op, Inc.*, 69 F.3d 746 (5th Cir. 1995) (opinion withdrawn); 7 *Collier on Bankruptcy* ¶ 1104.02 (16th ed. 2019).
[18] *In re Eurospark Industries, Inc.*, 424 B.R. at 627; *In re Ridgemour Meyer Properties, LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008).
[19] *In re Ionopshere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).
[20] *In re Ridgemour Meyer Properties, LLC*, 413 B.R. at 112.
[21] *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3d Cir. 1989).
[22] ECF No. 38 at 5.
[23] ECF No. 159-5 at 13.
[24] ECF No. 50 at 4.
[25] *Id.*

investigate, oversee, manage and direct the acts, conduct, assets, liabilities, and financial condition of the Debtors, the operation of the Debtors' business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan, including, without limitation, exclusive authority to:

a. cause the Debtors to negotiate financing, incur debt and grant liens as the CRO deems necessary, desirable or appropriate, subject to Court approval if outside the ordinary course of business;

b. direct and manage the Debtors' operations, including, without limitation, negotiating with significant business partners, contractors and customers of the Debtors;

c. cause the Debtors to dispose of estate assets outside the ordinary course of business pursuant to court approval;

d. oversee financial management and accountability of Debtors;

e. direct the litigation strategy of Debtors, including the investigation and prosecution, settlement or compromise of all estate causes of action;

f. formulate, evaluate and implement a restructuring plan or strategic alternatives for the Debtors (based upon what the CRO determines to be appropriate under the circumstances) and negotiate with the Debtors' creditors and other stakeholders in connection therewith;

g. represent the Debtors' interests through counsel before the Court;

h. select and retain professionals and advisors for the Debtors, pursuant to Court approval if, and as required by the Bankruptcy Code;

i. take such actions as the CRO deems necessary, desirable or appropriate to protect and preserve the value of the Debtors' assets and business for the benefit of the Debtors' creditors and, as appropriate, its equity security holders;

j. cause the Debtors to enter into any contract or agreement, to modify, amend, terminate and/or enforce any of their contractual rights, and to exercise the Debtors' rights under the Debtors' agreements and other agreements in favor of the Debtors;

k. open new bank accounts for the Debtors, revoke and/or cancel signatory authority over the Debtors' bank accounts, and grant to employees of the Debtors (including, without limitation, the CRO) signatory authority over the Debtors' new and existing bank accounts. The banks and other financial institutions where the Debtors have account relationships are authorized and directed to comply with instructions given by the CRO in accordance with this paragraph (l); and

l. exercise any other rights, powers and duties of a debtor in possession pursuant to 11 U.S.C. § 1107(a) and not expressly mentioned herein.

2. The principal's access to the Debtors' books, records and computer systems are hereby curtailed, and his duties and responsibilities are limited to those as directed by the CRO.

3. All owners, managers, operators, and other persons in control of Debtors or any of their assets or properties, are ordered (i) to turnover to the CRO all books, records, and documents pertaining to or owned by Debtors to the CRO; (ii) to turnover to the CRO all cash, receivables, properties, and other assets owned or controlled by Debtors; and (iii) to fully cooperate with the CRO in the discharge of the CRO's duties. This cooperation includes, but is not limited to, the filing of accurate schedules in this case.

4. All persons other than the CRO are enjoined from exercising any control over estate property, transferring, moving, or disposing of cash or assets, paying bills, and opening or closing accounts absent permission and directive from the CRO to do so.

5. First Financial Bank, N.A. is entitled reasonable and necessary attorneys' fees for work related to filing and prosecuting its Motion for Status Conference Regarding Unauthorized Sale of Property,[26] including work related to this Court's Order to Show Cause.[27] First Financial Bank, N.A. must file a fee application no later than March 4, 2022.

6. All other relief requested but not granted herein is expressly DENIED.

SIGNED February 18, 2022

_____
Eduardo Rodriguez
United States Bankruptcy Judge

---

[26] ECF No. 137.
[27] ECF No. 155.